MICHAEL A. PIAZZA, Cal. Bar No. 235881
E-mail: PiazzaM@sec.gov
MICHELE WEIN LAYNE, Cal. Bar No. 118395
E-mail: LayneM@sec.gov
LORRAINE B. ECHAVARRIA, Cal. Bar No. 191860
E-mail: EchavarriaL@sec.gov
GEORGIA SAVIOLA, Cal. Bar No. 150453
E-mail: SaviolaG@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Randall R. Lee, Regional Director
Briane Nelson Mitchell, Associate Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>Plaintiff,<br>v.<br>JERRY C. MOYES,<br>Defendant. | Case No.<br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(e), 21A(a), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(e),78u-1(a), & 78aa. Defendant has, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

2. Venue is proper in this district pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because the defendant resides in this district and certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district.

**SUMMARY OF THE ACTION**

3. This matter involves insider trading by Defendant Jerry C. Moyes ("Moyes"), who was chairman, chief executive officer and president of Swift Transportation Co., Inc. ("Swift"). On May 20, 2004, Moyes attended a mid-quarter meeting of Swift's board of directors, at which the board discussed Swift's better than expected second quarter earnings and authorized a $40 million expansion to an ongoing stock repurchase program. Moyes participated in the board's discussion about issuing a press release announcing these developments. While aware of this non-public information, Moyes purchased 187,000 shares of Swift stock for his personal trust account before Swift issued its press release on May 24 announcing those developments. Swift's stock price rose 20% the next day. Although Moyes did not sell his stock, he would have realized a profit of $622,130.80 had he done so at the end of trading on May 25.

4. By engaging in the conduct described in this complaint, Moyes directly and indirectly engaged in acts, practices and courses of business in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

5. The Commission brings this action for an order permanently enjoining Moyes, ordering disgorgement of unlawful profits, and imposing civil penalties.

///

///

///

///

**THE DEFENDANT**

6. Moyes, age 61, is a resident of Phoenix, Arizona. Moyes bought Swift in 1968 and was Swift's chairman, chief executive officer, and president during the relevant time. Moyes stepped down as president in November 2004 and has agreed to relinquish his position as chief executive officer on December 31, 2005.

**RELATED ENTITY**

7. Swift is a Phoenix-based trucking company that transports mainly non-perishable merchandise, food and beverage throughout the United States and in Mexico. Swift's common stock is registered with the Commission and is traded on the Nasdaq National Market.

**DEFENDANT'S IMPROPER TRADING**

8. On May 20, 2004, Moyes attended a mid-quarter meeting of the Swift board of directors. At the meeting, Swift's chief financial officer informed the board that April's earnings results were five cents better than the previous year and that second quarter earnings were projected to be in the range of $.25 to $.30, higher than analysts' estimates of $.22 per share.

9. At the meeting, the board also authorized a $40 million addition to Swift's ongoing $100 million stock repurchase plan. Moyes participated in the board's discussion about issuing a press release announcing these developments.

10. Moyes knew, or was reckless in not knowing, that the information regarding Swift's second quarter projections and stock buyback plan was material non-public information. As Swift's chairman, chief executive officer and president, Moyes owed a duty of trust and confidence to Swift and its shareholders.

11. Moyes knew, or was reckless in not knowing, that he should have kept the information about Swift's second quarter projections and stock buyback plan confidential and could not use or take advantage of the information.

12. At all relevant times, Swift had an insider trading policy that prohibited employees from trading in Swift securities while aware of material, nonpublic information concerning the company.

13. On May 21, 2004, Moyes purchased 87,000 shares of Swift common stock for his personal trust account that he jointly held with his wife. On May 24, 2004, Moyes purchased an additional 100,000 Swift shares for his personal account. Swift timely filed statements of changes in beneficial ownership (known as Form 4s) with the SEC reflecting Moyes' trades.

14. On the evening of May 24, 2004, Swift announced its second quarter earnings projections and the board's authorization of the stock repurchase plan. Swift finalized the press release announcing these developments on May 24. Moyes reviewed the press release before it was issued. The next day, Swift's stock closed at $18.71 per share, a 20% increase from the previous day's close, with a trading volume increase of over 400%. Moyes did not sell his stock but would have realized a profit of $622,130.80 had he done so.

15. Upon learning of Moyes' trades, Swift's independent directors took corrective action, including implementing a stricter insider trading policy, instituting a pre-clearing process for all trades by company insiders, and asking Moyes to deposit funds equal to his unrealized profits into a trust account under their control. Moyes voluntarily complied with their request.

16. By purchasing Swift stock while aware of the second quarter earnings projections and the board's authorization of the stock buyback plan before this information became public, Moyes violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

///

///

///

///

## CLAIM FOR RELIEF

## FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

17. The Commission realleges and incorporates by reference ¶¶ 1 through 16 above.

18. Moyes, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

a. employed devices, schemes, or artifices to defraud;

b. made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

19. By engaging in the conduct described above, Moyes violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

**I.**

Issue a final judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining Moyes and his officers, agents, servants, employees, and

attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the final judgment by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**II.**

Order Moyes to disgorge all ill-gotten gains from his illegal conduct, together with prejudgment interest thereon.

**III.**

Order Moyes to pay civil penalties under Section 21A of the Exchange Act, 15 U.S.C. § 78u-1(a).

**IV.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**V.**

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: September 21, 2005

Georgia Saviola
Georgia Saviola
Attorneys for Plaintiff
Securities and Exchange Commission